Opinion concurring-in-part, dissenting-impart filed by Circuit Judge NEWMAN.
*1333 DYK, Circuit Judge.
Romag Fasteners, Inc. (“Romag”) owns U.S. Patent No. 5,722,126 (“126 patent”) on magnetic snap fasteners, which it sells under its registered trademark, ROMAG, U.S. Trademark Reg. No. 2,095,367 (“’367 trademark”). Romag sued Fossil, Inc. and various retailers (together, “Fossil”) for, inter alia, patent infringement, trademark infringement, and violation of the Connecticut Unfair Trade Practices Act (“CUT-PA”) in the U.S. District Court for the District of Connecticut (“district court”). The jury returned a verdict for Romag, finding that Fossil had engaged in patent and trademark infringement and in unfair trade practices. A two-day bench trial resolving other issues followed, after which the district court entered judgment on the jury verdict. This court affirmed the judgment of patent and trademark infringement; other aspects of the judgment were not appealed. See Romag Fasteners, Inc. v. Fossil, Inc., Nos. 2014-1896, 2014-1897, 686 Fed.Appx. 889, 2017 WL 1906904 (Fed. Cir. May 3, 2017) (“Romag II”).[1]
Romag sought attorney’s fees under the Patent Act, 35 U.S.C. § 285, Lanham Act, 15 U.S.C. § 1117(a), and CUTPA. The district court granted fees under the Patent Act and CUTPA, but not under the Lan-ham Act. Fossil appeals and Romag cross-appeals. We vacate and remand.
Background
Romag owns the 126 patent and the ’367 trademark, which are both directed to magnetic snap fasteners. Romag licensed the 126 patent and the ’367 trademark to a ■ Chinese manufacturer, which supplied authentic ROMAG magnetic snaps for use in handbags manufactured and distributed by Fossil. In 2010, a batch of Fossil handbags appeared to contain counterfeit ROMAG magnetic snaps, which led Romag to sue Fossil for, inter alia, patent and trademark infringement and violation of the CUTPA. The details of Romag’s infringement suit are described in our prior opinion, Romag I, 817 F.3d at 783-84. The jury found Fossil liable for patent and trademark infringement, as well as for engaging in unfair trade practices under the CUTPA. The patent and trademark infringement verdicts were appealed, and we affirmed the judgment of liability. Id. After the trial on the merits, Romag requested attorney’s fees under the Patent Act, Lanham Act, and CUTPA.
Under the Patent Act and the Lanham Act, “[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.” 35 U.S.C. § 285; 15 U.S.C. § 1117(a). In Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. —, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014), the Supreme Court held that under 35 U.S.C. § 285, “an ‘exceptional’ case is simply one that stands out from others with respect to the substantive strength of a party’s litigating position ... or the unreasonable manner in which the case was litigated ..., considering the totality of the circumstances.” 134 S.Ct. at 1756.
*1334 Applying the Octane standard, the district court found that Romag was entitled to attorney’s fees under § 285 of the Patent Act because Fossil did not “withdraw [anticipation and obviousness] defenses with prejudice until after trial,” and because Fossil’s “patent invalidity defense of indefiniteness bordered on frivolous.” J.A. 6. The district court also found that Fossil’s non-infringement position (as opposed to its invalidity position) was not “so frivolous or groundless as to justify an award of fees,” J.A. 5. Finally, the district court declined to consider Romag’s conduct as part of the totality of circumstances because it had already penalized Romag for the timing of Romag’s infringement suit and Romag’s misconduct during the TRO filing. The district court concluded that it saw “no need to further sanction Plaintiff by denying an award of fees in this case.” J.A. 7.
With respect to the Lanham Act, the district court applied the prevailing Second Circuit precedent with respect to 15 U.S.C. § 1117(a) that “allows recovery of a reasonable attorney’s fee only on evidence of fraud or bad faith.” Louis Vuitton Malletier S.A. v. LY USA Inc., 676 F.3d 83, 111 (2d Cir. 2012) (citations, quotation marks, and alterations omitted). Under this standard, the district court found that “in the absence of bad faith, fraud, or willfulness on part of the Defendants, this case is not ‘exceptional’ within the meaning of the Lanham Act and Plaintiff is not entitled to recover its reasonable attorney’s fees.” J.A. 9. The district court also awarded Romag attorney’s fees under the CUTPA.
Fossil appeals the' award of fees under the Patent Act. Romag cross-appeals the denial of fees under the Lanham Act. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
We review a district court’s grant of attorney’s fees for an abuse of discretion. Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., — U.S. —, 134 S.Ct. 1744, 1747, 188 L.Ed.2d 829 (2014) (Patent Act standard); Milo & Gabby LLC v. Amazon.com, Inc., No. 2016-1290, 693 Fed.Appx. 879, 882, 2017 WL 2258605, at *3 (Fed. Cir. May 23, 2017) (Lanham Act standard). A district court abuses its discretion if it rules based “on an erroneous view of the law or on a clearly erroneous assessment of' the evidence.” Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).
Discussion
I
We first address Romag’s contention that the district court erred in not awarding attorney’s fees under the Lan-ham Act, and that the Octane standard applies to both the award of fees under the Patent Act and under the Lanham Act. The district court here concluded that although this “case is ‘exceptional’ under the more lenient Patent Act standard announced in Octane Fitness, it d[id] not find that Defendant acted fraudulently or in bad faith [under the Louis Vuitton standard] ... with respect to trademark infringement ... to recover its reasonable attorney’s fees under” the Lanham Act. J.A 9. We conclude that the district court erred and that the Octane standard applies to the Lanham Act.
Before Octane, the Second Circuit allowed recovery of attorney’s fees under 15 U.S.C. § 1117(a) only if there was bad faith or willful infringement on the part of the defendants. See Louis Vuitton, 676 F.3d at 111. The question is whether this *1335 standard survives after Octane. There have been no Second Circuit decisions on this issue since Octane.[2] In Romag I, we followed the prevailing Second Circuit rule with respect to the award of infringer profits under the Lanham Act, after finding that there were no Supreme Court cases-on this issue. See 817 F.3d at .785. Here, however, there is intervening relevant Supreme Court authority which, we think, would lead the Second Circuit to follow other circuits which have held that the Octane standard applies to the Lanham Act. See Badalamenti v. Dunham’s, Inc., 896 F.2d 1359, 1362 (Fed. Cir. 1990) (“[I]f the regional circuit court has not spoken, we must predict how that court would decide the issue.... ”).
Since Octane was decided, the Third, Fourth, Fifth, Sixth, and Ninth Circuits have all held that the Octane “Court was sending a clear message that it was defining ‘exceptional’ not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well.” Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 315 (3d Cir. 2014); see also SunEarth, Inc. v. Sun Earth Solar Power Co., 839 F.3d 1179, 1181 (9th Cir. 2016); Baker v. DeShong, 821 F.3d 620, 623-24 (5th Cir. 2016); Slep-Tone Entm’t Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 313, 318 (6th Cir. 2015); Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015). Indeed, no circuit has specifically considered Octane and then declined to apply it to the Lanham Act.
This is unsurprising,' as the language of the Patent Act and the Lanham Act for attorney’s fees is identical. Both statutes provide that “[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.” 35 U.S.C. § 285; 15 U.S.C. § 1117(a). “[W]hen Congress uses the same language in two statutes having similar purposes, ... it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.” Smith v. City of Jackson, 544 U.S. 228, 233, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005). In fact, in determining what constitutes an “exceptional”-case under the Patent Act, the Octane Court looked to Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 526 (D.C. Cir. 1985), a Lanham Act case, explaining that “the term ‘exceptional’ in the Lanham Act’s identical fee-shifting provision, 15 U.S.C. § 1117(a), ... [also] mean[s] ‘uncommon’ or ‘not run-of-the-mill.’ ” Octane, 134 S.Ct. at 1756.
The legislative history of 15 U.S.C. § 1117(a) further supports using the same standard. The Senate Committee Report amending the Lanham Act to allow recovery of attorney’s fees—changing the rule enunciated in the Supreme Court decision Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967)—discussed the strong connection to the Patent Act:
The federal-patent and copyright statutes expressly provide for reasonable attorney fees.... Prior to 1967, the courts in trademark infringement ... cases had developed an equitable doctrine holding the attorney fees are recoverable by a successful plaintiff, notwithstanding the absence of express *1336 statutory authority under the Lanham Act. This doctrine was overruled, however, by the Supreme Court decision in Fleischmann, Trademark and unfair competition cases brought under the [Lanham Act], however, present a particularly compelling need for attorney fees, which are denied under the Fleischmann doctrine.... The proposed amendment would limit attorney fees to ‘exceptional cases’ and the award of attorney fees would be within the discretion of the court.
S. Rep. No. 93-1400, at 5, as reprinted in 1974 U.S.C.C.A.N. 7132, 7135-36.
Thus, we conclude that the Second Circuit would hold that, in light of Octane, the Lanham Act should have the same standard for recovering attorney’s fees as the Patent Act.
Fossil contends that the district court would not have awarded attorney’s fees under the Lanham Act even if it had applied the Octane standard. Fossil argues that Romag’s only theory for attorney’s fees under the Lanham Act was that Fossil’s non-infringement defense—that the magnetic snaps at issue here were actually authentic ROMAG snaps—was objectively unreasonable. And since the district court had already found that this defense was not unreasonable with respect to patent infringement, Fossil argues that the district court would make “the same finding under the Lanham Act.” Appellant Resp. & Rep. Br. 47. However, we think this issue is best left to the district court in the first instance on remand.
II
We next address whether the district court erred in awarding fees under 35 U.S.C. § 285 to Romag in this case.
Fees may be awarded under 35 U.S.C. § 285 if a party’s arguments are objectively unreasonable or if the case was litigated in bad faith. Octane, 134 S.Ct. at 1756; Nova Chem. Corp. (Canada) v. Dow Chems. Co., 856 F.3d 1012, 1016-17 (Fed. Cir. 2017). Whether a case is exceptional is viewed under the totality of the circumstances of the case, Octane, 134 S.Ct. at 1756, for which we defer to the district court’s judgment under abuse of discretion review, Highmark, 134 S.Ct. at 1749. However, we are obligated to find an abuse of discretion if a district eourt “based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.” Cooter, 496 U.S. at 405, 110 S.Ct. 2447. We conclude that the district court here made several errors.
A
In response to Romag’s patent infringement allegation, Fossil initially presented invalidity. defenses of anticipation and obviousness. Fossil subsequently decided to not continue to pursue these defenses, as the patent infringement claim amount was relatively small. However, the district court concluded that Fossil declined to abandon these defenses until after the trial, and considered this to be a key factor for awarding fees to Romag. Specifically, the district court held that Fossil’s “failure to formally withdraw its [anticipation and obviousness] invalidity defenses until after the close of evidence weigh in favor of an award of fees in this case.” J.A. 6-7, The record establishes that the defenses were withdrawn before trial.[3]
First, during the March 5, 2014, pretrial conference, the following two exchanges occurred which indicate that the *1337 district court was aware that Fossil would not be pursuing invalidity defenses.
Court: [A]re the defendants asserting the affirmative defenses to the patent claim of obviousness and prior art?
Fossil: At this point, your Honor, we are not going to assert those defenses.
Court: Okay.
J.A. 2107.
Fossil: I think we indicated that validity defenses would not be asserted.
Court: And obviousness.
Fossil: Yes.
J.A. 2190-91.
Second, during the March 18, 2014, pretrial conference, the district court specifically stated that “we clarified in our last hearing that there’s no invalidity defense being advanced.” J.A. 2255.
Third, the following exchange—which took place the day before the district court ruled on Romag’s Rule 50 motion on patent validity—indicates that the court and the parties were aware of the invalidity defenses’ withdrawal prior to trial:
Romag: Your Honor, plaintiff moves for judgment as a matter of law under Rule 50.... [T]he defendant has not put on any evidence with respect to the invalidity.... And since that was one of their defenses, it seems to us we’re entitled to judgment on that.,,.
Court: I thought the defendant at our pretrial conference indicated [it] would not be pursuing the invalidity defense.
Fossil: On trademark and on patent, that’s correct, your Honor.
[[Image here]]
Court: ... If they’re not pursuing it, why isn’t your motion moot?
Romag: ... We’ve gone all the way through this case ..., and now they decided right before trial that they don’t wish to pursue it; and I think we’re entitled to a judgment.
Court: Any problem with that, Mr. Cass [Fossil counsel]? I don’t think the plaintiff wants to see this again.
Fossil: I think it’s a moot issue. We didn’t raise it.... And then I think at the pretrial stage we indicated we weren’t going to. ...
Court: So if the defendants have clarified that they’re not claiming invalidity ... [,] the charge should properly instruct that the patent is a valid patent, that the parties do not dispute that.
Fossil: I believe we already addressed it ..., your Honor.
[[Image here]]
Romag: Your Honor, ... they’ve never withdrawn these claims. They’re in them answer. They’ve gone up to trial with all this information. At the last moment they withdraw it. I don’t think that makes it moot....
[[Image here]]
Fossil: Your Honor, I believe somewhere in the record ... it was already dismissed. We did not go to trial on those claims.
Court: Well, that’s sort of what I thought had happened....
J.A. 3865-68 (emphasis added). The following day, the district court clarified that “a portion of [Romag’s] motion yesterday was seeking a judgment against the defendant *1338 on the invalidity. The defendants represent that they have withdrawn- their invalidity defense. In the interest of justice, that defense ... [is] withdrawn with prejudice.” J.A.2426.
Significantly, Fossil also made no reference to anticipation and obviousness in the preliminary jury instructions, opening statement, witness testimony, proposed verdict form, and. final jury instructions.
Thus, Romag’s claim that “Fossil did not withdraw its invalidity defenses until after testimony was complete,” Appellee Br. 56, is misleading and contradicted by the record. We conclude that there appears to be full awareness between the parties and the district court that the patent invalidity defenses were withdrawn before trial, and that the Rule .50 motion .only reaffirmed that common understanding. The district court clearly erred in concluding that Fossil “did not formally withdraw these defenses with prejudice until after [the] trial.” J.A. 6. Nor is there any support for the district court’s finding that Fossil “aggressively pursue[d] invalidity counterclaims in an attempt to prolong litigation.” J.A. 7.
Finally, we note that the district court made no finding that Fossil’s defenses of anticipation and obviousness were objectively unreasonable. .
B
In response to Romag’s patent infringement allegation, Fossil also presented the invalidity defense of indefiniteness, arguing that the ’126 patent’s claim term “rotatable” was indefinite because the patent does not specify the “degree of force necessary to rotate.” J.A. 1752. On September 19, 2012, Fossil moved for partial summary judgment on this ground. While the motion was pending, Judge Young, who at the time was presiding over the case,[4] held a Markman hearing on April 9, 2013, and construed “rotatable” to mean “capable of being rotated and not rigidly secured.” J.A. 1682. This construction appeared to define the force necessary for making the fasteners “rotatable.” Indeed, on October 23, 2013, Judge Young granted, sua sponte, summary judgment for Romag on the indefiniteness issue, holding that the ’126 patent was definite because “rotatable” can be construed to mean “capable of being rotated.” J.A. 1753.
During the attornéy’s fees proceedings, the district court here concluded that “[b]ased on the tenor of Judge Young’s [summary judgment] opinion, it [was] clear ... that Defendants’ argument with respect to their patent invalidity defense of indefin'iteness bordered on frivolous.” J;A. 6. Specifically, the district court found that Judge Young had “likened Defendants’ evidence in support of its indefiniteness defense to a ‘woefully inadequate showing.’ ” Id. The district court also concluded that “[i]n light of Judge Young’s ruling, ... [the] Defendants’ indefiniteness defense was entirely meritless and was raised for improper purposes.” J.A. 38 (citation and internal quotation marks omitted). These findings are erroneous assessments of the record.
First, the district court erred in concluding that Judge Young had found Fossil’s indefiniteness evidence to be “woefully in *1339 adequate.” The relevant portion of Judge Young’s opinion states:
[A] party that moves for summary judgment runs the risk that if it makes a woefully inadequate showing, not only might its own motion for summary judgment be denied, the court may grant summary judgment sua sponte against the movant. [Citations to six cases from the Second Circuit and four cases from the First Circuit supporting this proposition.]
This body of .precedent constitutes more than adequate notice that the Court may enter summary judgment against the moving party. Such action is proper here. Fossil :.. proffer[s] Frederick Kucklick ... as [its] expert on indefiniteness.... Kucklick opines only that
the ’126 patent does not provide an acceptable way to quantify the degree of force necessary to consistently define the term ‘rotatable’ for invalidity and infringement purposes. The ’126 patent is silent regarding the degree of force necessary to qualify the attachment legs as ‘rotatable’ relative to the base washer.
That’s it. While these statements are true, this Court’s construction of “rotatable” renders them immaterial. What is more, these opinions are nothing more than an ipse dixit, and the Federal Circuit has concluded that such general and conclusory testimony “does not suffice as substantial evidence of invalidity” sufficient to carry the defendants’ burden of proof. In the absence of sufficient evidence of indefiniteness, Fossilfs] claim must fail and the Court declares that the ’126 patent withstands the indefiniteness challenge and that defense is no longer in this case.
J.A. 1753-57 (emphases added) (citations omitted). ...
Based on this passage, we do hot read Judge Young’s opinion to be describing Fossil’s indefiniteness defense as “woefully inadequate” in the sense that Fossil’s theory was objectively unreasonable. The eases upon which Judge Young relied do' not suggest otherwise; they deal simply with the procedural requirements for granting summary judgment against the moving ■party. The inadequacy of the movant’s showing is merely a necessary predicate for the grant of summary judgment against the moving party, just as it is a requirement for summary judgment under any circumstances. Rather, Judge Young concluded that while it was “true” that the patent had not quantified the amount of force necessary, “this Court’s construction of ‘rotatable’ renders [Fossil’s indefiniteness evidence] immaterial.” J.A. 1756. Thus, Judge Young’s opinion appears to grant sua sponte summary judgment to Romag because Fossil’s indefiniteness argument was precluded by the claim construction. We also do not read Judge Young’s summary judgment opinion to have a “tenor” that indicates that Fossil’s indefiniteness defense “bordered on frivolous.”
Second, we note that it was Fossil, not Romag, who moved for summary judgment on the indefiniteness issue. Although not dispositive, we find this to suggest that Romag did not always view Fossil’s indefiniteness argument as frivolous.
For these reasons, we conclude that the district court, relying on Judge Young’s ruling, erred in holding that,Fossil’s indefiniteness defense bordered on frivolous.
C
In awarding attorney’s fees under the Patent Act, the district court declined *1340 to consider Romag’s conduct earlier during the litigation that the district court had sanctioned. With respect to the . timing of the merits suit, Romag was aware of Fossil’s infringement by May of 2010, but did not commence its lawsuit until November of 2010. The district court thus found that “Romag’s delay was unreasonable.” J.A. 67. Because of this delay, Fossil had “suffered material economic prejudice as a result.” J.A. 68. These findings led the district court to the “inescapable conclusion ... that Plaintiff carefully timed this suit to take advantage of the imminent holiday shopping season to be able to exercise the most leverage over Defendants in an attempt to extract a quick and profitable settlement.” J.A. 67. In fact, Romag moved for a TRO and a preliminary injunction on November 23, 2010, three days before Black Friday, using a declaration that the district court found to be “sparse” and which contained “misleading representations.” J.A. 78. Based on all of this, the district court sanctioned Romag because it had “acted in bad faith.” Id,
However, during the proceedings for attorney’s fees, the district court concluded that because “the Court ha[d] already ordered that Plaintiff may not recover its fees in connection with the TRO and reduced the jury’s reasonable royalty award in light of Plaintiffs laches ... [and] [because these issues were limited in scope ,.., [it saw] no need, to further sanction [Romag] by denying an award of fees in this case.”[5] J.A. 7. The district court erred in reaching this conclusion.
In determining whether a case is exceptional for 35 U.S.C. § 285 fees, a district court must “consider[ ] the totality of the circumstances.” Octane, 134 S.Ct. at 1756. This includes the conduct of the prevailing party that is seeking attorney’s fees. In Gaymar Industries v. Cincinnati Sub-Zero Products, Inc., 790 F.3d 1369 (Fed. Cir. 2015), we clarified that “the conduct of the parties is a relevant factor under Octane’s totality-of-the-circumstances inquiry, including the conduct of the movant.” Id. at 1373. For this proposition, Gaymar cited Power Mosfet Technologies, LLC v. Siemens AG, 378 F.3d 1396 (Fed. Cir. 2004), which affirmed a district court’s denial of § 285 fees “because all of the parties had conducted themselves without the decorum required when practicing before a federal court ... and credited each of the parties with some share of the bad behavior.” Id. at 1415 (emphasis in original).
The district court therefore erred in declining to consider, in connection with its totality of circumstances analysis, Romag’s earlier litigation misconduct. Romag’s misconduct cannot be disregarded on the theory that failure to award fees is equivalent to double-sanctioning Romag. Indeed, the fact that this misconduct has already been sanctioned should be weighed more heavily, rather than be excluded, in the 35 U.S.C. § 285 analysis.
D
One other alleged error by the district court was not in fact an error. In response to Romag’s patent and trademark infringement allegations, Fossil presented a non-infringement defense, where it asserted that the batch of magnetic *1341 snaps at issue were in fact genuine RO-MAG snaps. After the trial, Romag moved for judgment as a matter of law' with respect to this noninfringement position. The court denied this motion ’and allowed the jury to decide the issue. During the proceedings for attorney’s fees, the district court found that “this Court’s ruling denying Plaintiffs Rule 50(a) motion precludes a finding that Defendant’s] [non-infringement] argument was so frivolous, or groundless as to justify an award of fees.” J.A. 5.
On appeal, Romag contends that the district court erred in concluding that the refusal to grant a Rule 50(a) motion precludes awarding attorney’s fees; We agree with Romag that Rule 50(a) motions are often denied as a matter of course without resolving the merits of the motion. “Thus, while a district court is permitted to enter judgment as a matter of law when it concludes that the evidence is legally insufficient, it is not required to do so.” Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 405, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006); see also 9B Wright & Miller, Federal Practice and Procedure § 2533 (3d ed. 2017 update) (“The trial judge is not required to grant judgment as a matter of law even in a case in which it has the power and it might be appropriate to do so.”). This is especially true here, where the district court denied Romag’s Rule 50(a) motion without “dissecting] the evidence.” J.A. 2425. Thus, the district court’s denial of Romag’s Rule 50(a) motion does not preclude a finding that Fossil’s noninfringement position was frivolous.
However, here, the district court relied on more than its Rule 50(a) ruling to deny attorney’s fees on this issue. The district court also found that Fossil’s “arguments with respect to non-infringement were not entirely groundless/’ J.A. 6. Thus, as required by Octane, the district court properly evaluated “the substantive strength of a party’s litigating position.” 134 S.Ct. at 1756. Based on this finding, we see no error in the .district court’s refusal to consider this issue as an adverse factor in the totality of circumstances, because “[a] party’s position on issues of law ultimately need not be correct for them to not *stand[]. out,’ or be found reasonable.” SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1348 (Fed. Cir. 2015) (alteration in original). It is not relevant that Fossil’s non-infringement defense may have been weak, if it did not rise to the level of being objectively unreasonable. See Univ. of Utah v. Max-Planck-Gesellschaft zur Foerderung der Wissenschaften e.V., 851 F.3d 1317, 1323 (Fed. Cir. 2017).
E
The district court, under its inherent powers, awarded Romag the portion, of its expert witness fees incurred in connection with Fossil’s motion for summary judgment on indefiniteness. This was based on the finding that Fossil’s indefiniteness argument was without merit according to Judge Young’s decision. Because we have set aside that finding, we also set aside the expert witness fee.award.
The supplemental fees awarded in connection with the application for attorney’s fees are also set aside in light of our conclusions,
Conclusion
This case is remanded to the.district court to consider the Lanham Act and the Patent Act attorney’s fees and the claimed expert fees under the correct standard, *1342 free of the errors identified above. On remand, based on a correct analysis, the district court-should evaluate whether an award of fees is appropriate.
VACATED AND REMÁNDED
Costs
Costs to neither party.

. The Supreme Court's decision in SCA Hygiene Products Aktiebolag v. First Quality Baby Products, LLC, — U.S. —, 137 S.Ct. 954, 967, 197 L.Ed.2d 292 (2017), held that laches is no longer a defense to patent infringement during the statutoiy period. In light of this, we vacated and remanded section I of our 2016 opinion, Romag Fasteners, Inc. v. Fossil, Inc., 817 F.3d 782 (Fed. Cir. 2016) (“Romag I"), which affirmed the district court’s reduction of the jury awarded patent damages by eighteen percent due to the defense of laches. See Romag II, 686 Fed.Appx. at 890, 2017 WL 1906904, at *1, We otherwise reinstated our prior opinion in all other respects. Id.

. The Second Circuit in Penshurst Trading Inc. v. Zodax L.P., 652 Fed.Appx. 10 (2d Cir. 2016), held that "[w]e have not yet decided whether [the Octane] rule applies in the context of the Lanham Act, but we need not do so here ... [because] we [would] affirm the district court’s denial of attorney’s fees” under either Octane or Louis Vuitton. Id. at 12.

. Contrary to the dissent, we do not conclude that Fossil withdrew its invalidity defenses at *1337 the February 12 teleconference. See Dissent Op. 1343, 1344.

. Judge Young, "from the U.S. District Court , for the District of Massachusetts, was sitting by designation in the District of Connecticut. He presided over the early stages of this litigation, but did not preside over the subsequent phases, including the pre-trial conferences, • jury trial, and attorney's fees proceedings.

. As stated earlier, SCA Hygiene held that laches is not a defense to patent infringement during the statutory period. 137 S.Ct. at 967 (2017). However, no party contends that SCA Hygiene makes the district court's sanctions in connection with Romag's TRO misconduct inappropriate.